14 CV 3738

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

JOHN LOPEZ

Plaintiff

-against-

HOLLISCO OWNERS' CORP., MIDBORO MANAGEMENT, INC. and
JENNIFER SANTANIELLO

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOVING DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 56**

**BRAVERMAN GREENSPUN, P.C.**
Attorneys for the Moving Defendants
110 East 42nd Street, 17th Floor
New York, New York 10017
(212) 682-2900

{00423759;1}

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

ARGUMENT....................................................................................................................2

POIINT I:  THE MOVING DEFENDANTS WERE NOT PLAINTIFF'S EMPLOYER..3

POINT II:  NO ADVERSE ACTION WAS TAKEN AGAINST PLAINTIFF DUE TO A PERCEIVED DISABILITY ............................................................................................7

    A.    Plaintiff Cannot Demonstrate Employer Perceived a Disability ............................8

    B.    The ADA Permits and Mandates Inquiries into an Employee's Health So As To Determine Whether an Accommodation Can Be Offered, Or for the Safety of the Employee or Others ...............................................................................................9

    C.    Plaintiff Was Not Terminated...............................................................................11

POINT III:  PLAINTIFF'S FIRST, SECOND AND THIRD CAUSES OF ACTION, WHICH ALLEGE THAT THE CO-OP FAILED TO COMPENSATE HIM FOR OVERTIME, MUST BE DISMISSED AS AGAINST THE MOVING DEFENDANTS AS THEY WERE NOT PLAINTIFF'S EMPLOYER NOR WAS THERE ANY VIOLATION OF THE FAIR LABOR STANDARDS ACT OR THE NEW YORK LABOR LAW ...................................................................................................................12

    A.    The Moving Defendants Were Not Plaintiff's Employer......................................12

    B.    Plaintiff Was Properly Compensated For His Time ..............................................14

CONCLUSION................................................................................................................16

{00423233;1}                                                    i

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970)........................................................................................2

*AFL–CIO*
  324 N.L.R.B. 743 (1997) ...............................................................................6

*AM Prop. Holding Corp.*
  350 N.L.R.B. 998 (2007) ...............................................................................5

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)........................................................................................3

*Anderson v. Mt Clemens Pottery Co.*
  328 U.S. 680 (1946)..................................................................................15, 16

*Arculeo v. On-Site Sales & Marketing, LLC*
  425 F.3d 193 (2d Cir. 2005)...........................................................................5

*AT&T v. N.L.R.B.*
  67 F.3d 446 (2d Cir. 1995).............................................................................6

*Baker v. CSX Transportation, Inc.*
  546 F.Supp. 2d 90 (W.D.N.Y. 2008) ...........................................................9

*Barber v. Verizon New England, Inc.*
  2006 WL 3524465, *6 (D.R.I. 2008) ...........................................................9

*Barfield v. N.Y.C. Health & Hosp. Corp.*
  432 F.Supp.2d 390 (S.D.N.Y.2006)
  aff'd, 537 F.3d 132 (2d Cir.2008) ...............................................................13

*Boutin v. Exxon Mobil Corp.*
  730 F.Supp.2d 660 (S.D.Tex. 2010) .............................................................5

*Carter v. Dutchess Community College*
  735 F.2d 8 (2d Cir. 1984)..............................................................................13

*Celotex Corp. v. Catrett*
  477 U.S. 317 ...................................................................................................2

*Clinton's Ditch Cooperative, Co. v. NLRB*
  778 F.2d 132 (2d Cir.1985)............................................................................5

*Daniels v. 1710 Realty LLC*
  497 Fed. App'x 137 (2d Cir.2012) .......................................................16

*Dupree v. Urban Homesteading Assistance Bd. Sterling Street Housing Development Fund Corp.*
  2011 WL 1343163 at * 6 (E.D.N.Y. April 8, 2011) ...................................5

*Frankel v. Bally, Inc.*
  987 F.2d 86 (2d Cir.1993)..................................................................6

*Furnish v. SVI Systems, Inc.*
  270 F.3d 445 (7th Cir. 2001) ..............................................................9

*G. Wes Ltd. Co.*
  309 N.L.R.B. 225 (1992) ....................................................................5

*Grant v. Baptist Hospital East*
  2005 WL 1503570 (W.D.Ky., June 23, 2005)...........................................9

*Graves v. Women's Prof'l Rodeo Assoc.*
  907 F.2d 71 (8th Cir. 1990) ................................................................4

*Hatcher v. Augustus*
  956 F. Supp. at 390 (E.D.N.Y. 1997) .................................................5, 6

*Herman v. RSR Security Services, Ltd.*
  172 F.3d 132 (2d Cir. 1998)...............................................................12

*In re Ted Is Back Corp.*
  64 N.Y.2d 725
  485 N.Y.S.2d 742 (1984) ...................................................................4

*Jones v. Nissan No. Amer., Inc.*
  438 Fed.Appx. 388 (6th Cir.2011).......................................................10

*Katz v. City Metal Co., Inc.*
  87 F.3d 26 (1st Cir.1996)....................................................................8

*Keith v. County of Oakland*
  703 F.3d 918 (6th Cir.2013) ..............................................................10

*Kern v. City of Rochester*
  93 F.3d 38 (2d Cir. 1996)....................................................................4

*Kleiber v. Honda of America Mfg., Inc.*
  485 F.3d 862 (6th Cir. 2007). ............................................................10

*Konrad v. 136 East 64th St. Corp.*
  667 N.Y.S.2d 354 (1st Dept. 1998) .......................................................7

{00423233;1}                                    iii

*Lopez v. Acme Am. Envtl. Co., Inc.*
2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) ....................................................12

*Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*
263 F.3d 208 (2d Cir.2001)..........................................................................................8

*Martinez v. City of Roy*
141 F.3d 1185 (10th Cir. 1998) ....................................................................................9

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574 (1986)......................................................................................................2

*NLRB v. Solid Waste Servs., Inc.*
38 F.3d 93 (2d Cir.1994)...............................................................................................5

*O'Connor v. Davis,* 126 F.3d 112 (8th Cir. 1990).............................................................4

*Pappas v. Bethesda Hosp. Ass'n*
861 F.Supp. 616 (S.D. Ohio 1994) ...............................................................................5

*People of State of New York v. Holiday Inns, Inc.*
62 Fair Empl. Prac. (BNA) 815
1992 WL 532169 (W.D.N.Y.1992) ..............................................................................6

*Photis v. Sears Holding Corp.*
2013 WL 3872519, *7 (D.N.J. 2013) .........................................................................10

*Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*
180 F.3d 468 (2d Cir.1999)...........................................................................................4

*Rivera v. Ndola Pharmacy Corp.*
497 F.Supp.2d 381 (E.D.N.Y.2007) ...........................................................................16

*Rodgers v. Norfolk Southern Corporation*
304 F.Supp.2d 961, (S.D.Ohio, 2003) ..........................................................................9

*S. Cal. Gas Co.*
302 N.L.R.B. 456 (1991) ..............................................................................................6

*Service Employees Intern. Union, Local 32BJ v. N.L.R.B.*
647 F.3d 435 (2d Cir. 2011)..........................................................................................6

*Sowemimo v. D.A.O.R. Sec., Inc.*
43 F.Supp.2d 477 (S.D.N.Y. 1999)...............................................................................5

*Sussle v. Sirina Protection Systems Corp.*
269 F.Supp.2d 285 (S.D.N.Y. 2003)..............................................................................9

*Tagare v. Nynex Network Systems Co.*
    994 F.Supp. 149 (S.D.N.Y.1999)......................................................4

*Tubens v. Police Department of the City of N.Y.*
    48 F.Supp.2d 412 (S.D.N.Y. 1999)...................................................8

*Zheng v. Liberty Apparel Co. Inc.*
    355 F.3d 61 (2d Cir.2003)...............................................................13

## **STATUTES**

12 NYCRR 142-2.6 ...............................................................15, 16

29 C.F.R. § 1630.2(*o*)(3) ...............................................................11

29 C.F.R. §1630.2(i)........................................................................8

29 C.F.R. §778.105........................................................................14

29 U.S.C. § 203(d)........................................................................12

29 U.S.C. 201................................................................................15

42 U.S.C. § 12112(a).......................................................................7

Fed. R. Civ. P. 56(c)........................................................................2

Fed. R. Civ. P. 56(e)....................................................................2, 3

New York's Labor Law 12 NYCRR 142-2.2 ...................................15

## PRELIMINARY STATEMENT

Defendants Midboro Management, Inc. ("Midboro") and Jennifer Santaniello ("Santaniello," collectively, the "Moving Defendants") submit this memorandum of law in support of their motion, pursuant the FRCP 56, for an order granting summary judgment to the defendants and dismissing the Complaint as against them.

Plaintiff John Lopez ("Plaintiff"), brings this federal employment discrimination action claiming that he was discriminated by his employer, Hollisco Owners' Corp. (the "Cooperative") due to a perceived disability.   Plaintiff further alleges that defendants Hollisco and Santaniello participated in such discrimination.   Finally, Plaintiff alleges that the defendants have failed to properly compensate him for overtime in violation of the Fair Labor Standards Act (29 U.S.C. §201, *et.seq.*) and related State laws.

No scrutiny of the substance of Plaintiff's allegations is required for the Court to dismiss the Complaint in its entirety because:

(i)     The Moving Defendants must be dismissed from this action because they were never Plaintiff's employer, but merely the Cooperative's managing agent.   They did not pay Plaintiff's wages, and did not exercise any right to hire, fire, or take a employment-related action against any of the Cooperative's employees;

(ii)    The Moving Defendants must be dismissed from this action because there was no discrimination based on a perceived disability but merely a permissible work-related request for a doctor's note clearing the Plaintiff for work, which the Plaintiff did not comply with;  and

(iii)   The Moving Defendants must be dismissed from this action because the Plaintiff was properly compensated for his time based upon Hollisco's work week, and thus there has been no violation of the Fair Labor Standards Act and related State and City laws.

## STATEMENT OF FACTS

The Moving Defendants respectfully refer the Court to the affidavit of Jennifer Santaniello (the "Santaniello Aff.") for a full and complete recitation of the facts. Capitalized terms not defined herein are defined in the Santaniello Aff.

## ARGUMENT

This Court should grant summary judgment, as requested herein, in accordance with FRCP 56 where there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *on remand*, 826 F.2d 33 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 1066 (1988).

FRCP 56 provides that summary judgment is appropriate when:

> [t]he pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *See*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden may be discharged by demonstrating the absence of evidence supporting the non-moving party's case as to which it would have the burden of proof at trial. *See*, *Celotex Corp.*, 477 U.S. at 323. The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

To satisfy this burden, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid

summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In response to a properly supported motion, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also*, *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment").

Here, unassailable evidence belies the Complaint's bald assertions that the Moving Defendants were Plaintiff's employer.  Moreover, as Plaintiff did not return to work because he refused to submit a doctor's note of medical clearance, there has been no discrimination.  Finally, Plaintiff mistakenly submits an overtime claim based upon the hours worked during a calendar week, as opposed to a "workweek" as that term is defined in regulations promulgated under the Fair Labor Standards Act.  Accordingly, there is no dispute that the Plaintiff has been paid for all hours worked and, as a result, the Moving Defendants should be dismissed from this action.

## POINT I

### THE MOVING DEFENDANTS WERE NOT PLAINTIFF'S EMPLOYER

The Moving Defendants are improper parties in this proceeding because they were never Plaintiff's employer, never paid Plaintiff's wages, and never had any actual or apparent authority, as the managing agent, to hire or fire Plaintiff.  Rather, Plaintiff was an employee of the Cooperative.

As a threshold question of law, in determining whether an entity can be deemed an "employer" subject to any of the federal discrimination statutes, "courts turn to common-law principles to analyze the character of an economic relationship 'only in

situations that plausibly approximate an employment relationship.' " *O'Connor v. Davis*, 126 F.3d 112, 115 (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir. 1990)).[1]  Thus, "a prerequisite to considering whether an individual is [an employee] under common-law agency principles is that the individual has been hired in the first instance." *O'Connor* at 115 (emphasis added).  In determining whether a person has been "hired," the court should look <u>primarily</u> to "whether [a plaintiff] has received direct or indirect remuneration from the alleged employer." *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir.1999);  *O'Connor* at 116.  "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist." *O'Connor*, 126 F.3d at 115-16.

As evidenced by the Cooperative payroll reports and his W-2 forms (*see* Exhibit "L"), as well as the decision issued by the New York State Department of Labor (*see* Exhibit "J"), the Cooperative (not the Moving Defendants) provided Plaintiff's remuneration in the form of all wage payments.  *See also*, Santaniello Aff. at ¶4.

The initial decision to hire Plaintiff (and all other Cooperative employees) was not made by the Moving Defendants.  Indeed, Santaniello was not employed by Midboro until years after Plaintiff was hired, and Midboro was not even managing the Co-op at the time.  *See*, Exhibit "B" at p. 34, lines 13-15  Rather, the Plaintiff was hired by the Cooperative as a porter.  *See*, Santaniello Aff. at ¶4.

---

[1]   Both Court of Appeal for the Second Circuit and New York State Court of Appeals have similarly identified four elements to analyze whether an employment relationship exists: (i) whether the proposed employer had power of selection and engagement over the employee; (ii) whether the proposed employer made payment of wages and salary to the employee; (iii) whether the proposed employer had power of dismissal over the employee; and (iv) whether the proposed employer had power to control the employee's conduct.  *See Kern v. City of Rochester*, 93 F.3d 38 (2d Cir. 1996); *Tagare v. Nynex Network Systems Co.*, 994 F.Supp. 149, 159 (S.D.N.Y.1999); *In re Ted Is Back Corp.*, 64 N.Y.2d 725, 485 N.Y.S.2d 742, 744 (1984).

Furthermore, Reilly, an employee of the Cooperative and its superintendent, was Plaintiff's supervisor.  As Plaintiff himself testified, he would obtain his schedule and daily work activities from Reilly.  *See* Exhibit "B" at p. 60, lines 6-7.

The mere fact that the Moving Defendants are responsible for such functions as maintaining and effectuating the Cooperative's payroll, and effectuating communications to the Board, is not probative of an employer-employee relationship between the Moving Defendants and the Plaintiff.  *Hatcher v. Augustus,* 956 F. Supp. at 390 (E.D.N.Y. 1997) (dismissing franchisor from Title VII action where franchisor provided payroll services on behalf of franchisee-employer);  *Pappas v. Bethesda Hosp. Ass'n*, 861 F.Supp. 616 (S.D. Ohio 1994) (holding that the administrator of employee benefits for the statutory employer was not agent of that employer, for purposes of determining whether it could be held liable under Title VII and the ADA).

While Midboro supervises the Cooperative's employees, this also cannot be grounds to deem the Moving Defendants as Plaintiff's joint employer with the Cooperative.  Supervision that is "limited and routine in nature," without exercising a right to hire, fire, or discipline, cannot justify a finding of joint employer status.[2]  *AM Prop. Holding Corp*., 350 N.L.R.B. 998, 1001 (2007), *citing G. Wes Ltd. Co*., 309 N.L.R.B. 225, 226 (1992) (rejecting joint employer theory where "directions of where to

---

[2]    Federal Courts sitting in the Second Circuit look to the joint employer doctrine developed by the National Labor Relations Board for guidance on its application to employment discrimination claims. *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (stating, for the purposes of Title VII analysis, that "[b]ecause the joint employer doctrine has been well-developed in National Labor Relations Board cases, we turn to such cases for guidance"); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F.Supp.2d 477, 490 (S.D.N.Y. 1999) (reviewing application of joint employer doctrine as set forth in NLRB decision, *Clinton's Ditch Cooperative, Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir.1985), and dismissing city agency from Title VII case on grounds that it did not hire, fire, or control employee); *Dupree v. Urban Homesteading Assistance Bd. Sterling Street Housing Development Fund Corp.*, 2011 WL 1343163 at * 6 (E.D.N.Y. April 8, 2011) (reviewing joint employer rule discussed in *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir.1994) for the purposes of Title VII analysis; *see also*, *Boutin v. Exxon Mobil Corp*., 730 F.Supp.2d 660, 680-83 (S.D.Tex. 2010);

do a job rather than how to do the job and the manner in which to perform the work," is insufficient to create a joint employer relationship); *Service Employees Intern. Union, Local 32BJ v. N.L.R.B.*, 647 F.3d 435, 443-44 (2d Cir. 2011) (affirming NLRB decision that purchaser of building was not joint employer with cleaning contractor, where purchaser's employee had role in cleaning of building but he did not train employees, he could not assign overtime work without consent of cleaning contractor, and employees could refuse overtime work); *AT&T v. N.L.R.B.*, 67 F.3d 446, 452 (2d Cir. 1995) (limited and routine supervision, without an ability to hire, fire, or discipline, cannot justify a finding of joint employer status); *AFL–CIO,* 324 N.L.R.B. 743, 746–49 (1997) (no joint employer relationship where employer regularly directed maintenance employees to perform specific tasks at particular times but did not instruct employees how to perform their work); *S. Cal. Gas Co.*, 302 N.L.R.B. 456, 461–62 (1991) (employer's direction of porters and janitors insufficient to establish joint employer relationship where employer did not, inter alia, affect wages or benefits, or hire or fire employees).

Finally, New York courts have considered additional factors for the "employer test," including, but not limited to: (i) the intention of the parties; (ii) who pays social security tax on behalf of the employee; (iii) who provides benefits to the employee; (iv) for whose benefit is the employee performing services; (v) who furnishes equipment for use by employees; and (vi) the location of the workplace. *Hatcher v. Augustus, supra* at 390; *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993); *People of State of New York v. Holiday Inns, Inc.,* 62 Fair Empl. Prac. (BNA) 815, 1992 WL 532169 (W.D.N.Y.1992).

Here, the Cooperative: (i) withheld the Plaintiff's social security taxes and paid his employment benefits; (ii) furnishes all equipment for its Building staff; (iii) wholly

received the benefit of the Plaintiff's service as a porter; and (iv) owns the Building that was the exclusive location of the Plaintiff's place of work. *See*, Exhibit "A" at ¶12.

Finally, the Moving Defendants acted, at all times, as agents for a disclosed principal (the Board), and therefore, can have no liability for the actions taken at the direction of the principal. *Konrad v. 136 East 64th St. Corp.*, 667 N.Y.S.2d 354, 356 (1st Dept. 1998).

Based on the foregoing, the fourth, fifth, sixth and seventh causes of action in the Complaint must be dismissed against the Moving Defendants.

## POINT II

## NO ADVERSE ACTION WAS TAKEN AGAINST PLAINTIFF DUE TO A PERCEIVED DISABILITY

The main thrust of the Plaintiff's Complaint is that he was discriminated against by the Co-op due to his perceived disability – having Hepatitis B or C. As will be shown below, the Plaintiff cannot satisfy the elements of his claim as: (i) neither the Moving Defendants nor the Co-op considered him to be disabled; (ii) the requirement that he submit a doctor's note advising his employer that he is able to return to work on a full-time basis was out of concern for the Plaintiff's safety, and the safety of his fellow employees and tenants, not due to any perceived disability; and (iii) he was never terminated from his employment; he merely refused to submit a timely doctor's note and never reappeared for work.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). In order for Plaintiff to obtain relief under the ADA, he must prove three things: first, that he was disabled, or perceived as disabled, within the meaning of the Act; second, that "with or

without reasonable accommodation he was able to perform the essential functions of his job," i.e., that he was "otherwise qualified" to continue to work as a porter; and third, that the Co-op discharged him in whole or in part because of his disability or perceived disability. *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996). Indeed, the employer must perceive that you are unable to perform your job as a result of a substantial limitation of a major life function. *Tubens v. Police Department of the City of N.Y.*, 48 F.Supp.2d 412 (S.D.N.Y. 1999).

To show that he was "otherwise qualified" to continue his employment, Plaintiff had to show, not only: (1) that he was disabled or perceived to be disabled within the meaning of the ADA; and (2) that the employer had notice of his disability or perceived disability; but also (3) that reasonable accommodation is available which would allow Plaintiff to perform the essential functions of the position; and (4) that Defendant denied Plaintiff reasonable accommodation. *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir.2001).

Plaintiff cannot make out a *prima facie* case of perceived or "regarded as" disability.

A.    *Plaintiff Cannot Demonstrate Employer Perceived a Disability*

Initially, Plaintiff would have to demonstrate that his employer believed that his perceived disability substantially limited one or more major life functions. *See*, 29 C.F.R. §1630.2(i). There is absolutely no evidence that anyone from the Co-op or Hollisco believed that this was the case. According to the testimony of Mr. Reilly, a note was requested from the Plaintiff out of concern for the staff. *See*, Exhibit "G" at p. 45, lines 16-20. According to Ms. Santaniello, the note was requested out of concern not only for the Plaintiff but also for the staff and for the tenants. *See*, Santaniello Aff. at ¶16. This

was the same sentiment shared by Mr. Spencer, the President of the Co-op's Board. *See*, Santaniello Aff. at ¶18.

At no time did anyone indicate that they believed that the condition – which Plaintiff himself brought up – impacted a major life function. Indeed, Hepatitis B and C have been found not to impact major life functions. *See, Baker v. CSX Transportation, Inc.*, 546 F.Supp. 2d 90, 100 (W.D.N.Y. 2008) (Hepatitis C not a disability under the ADA); *Furnish v. SVI Systems, Inc.*, 270 F.3d 445, 450 (7th Cir. 2001) (Hepatitis B is not a disability); *Sussle v. Sirina Protection Systems Corp.*, 269 F.Supp.2d 285, 312 (S.D.N.Y. 2003) (Hepatitis C does not substantially limit a major life activity); *Barber v. Verizon New England, Inc.,* 2006 WL 3524465, *6 (D.R.I. 2008) (Hepatitis C that allegedly impaired "physical activity", sexual activity, and the ability to reproduce not a disability under the ADA); *Grant v. Baptist Hospital East,* 2005 WL 1503570 (W.D.Ky., June 23, 2005) ("No reasonable jury could find that [H]epatitis C substantially limited Plaintiff's performance of major life activities."); *Rodgers v. Norfolk Southern Corporation,* 304 F.Supp.2d 961, (S.D.Ohio, 2003) (no evidence that Hepatitis C infection substantially inhibited any major life activity).

As the Plaintiff cannot demonstrate that his employer believed that his condition limited a substantial life function, his discrimination claims must be dismissed.

B.     *The ADA Permits and Mandates Inquiries into an Employee's Health So As To Determine Whether an Accommodation Can Be Offered, Or for the Safety of the Employee or Others*

Indeed, the entire basis of the Plaintiff's Complaint – that the mere request of a doctor's clearance proves discriminatory animus – is a legal fallacy. In *Martinez v. City of Roy*, 141 F.3d 1185 (10th Cir. 1998), the Tenth Circuit held that requesting medical clearance before two children – who had a rare skin condition that caused red scaling on

their skin – were permitted to use a pool was not discriminatory.  In doing so, the Court

held:

> It appears clear that Ms. Day's request for a doctor's
> verification of noncontagion was made out of concern for
> the safety and welfare of the other persons using the
> facility.   Contrary to plaintiff's contention, it was not
> evident that Ms. Day intended to discriminate against the
> children based on any real or perceived disability, and
> therefore, we conclude that the district court was correct in
> its determination that no reasonable jury could have found
> otherwise.

*Id.* at *3.  *See also*, *Photis v. Sears Holding Corp.*, 2013 WL 3872519, *7 (D.N.J. 2013)

("Defendants displayed a normal amount of concern for Plaintiff's medical condition,

adhered to standard procedure by asking for a doctor's note, and terminated Plaintiff for

reasons wholly unrelated to any disability or perceived disability").

    The very way that the ADA is set up requires such interactions with an employee,

so that the employer can find out more about an employee's disability and determine how

best to accommodate it, if an accommodation is at all possible.  The ADA requires

employers to engage in an interactive process, a duty which "is mandatory and 'requires

communication and good-faith exploration of possible accommodations.'" *Keith v.

County of Oakland,* 703 F.3d 918, 929 (6th Cir.2013) (citation omitted).  "The purpose of

this process is to 'identify the precise limitations resulting from the disability and

potential reasonable accommodations that could overcome those limitations.'" *Kleiber v.

Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).  As the name suggests,

the process involves communication among all concerned, yet it appears that Defendants

did not engage in any such dialogue with Plaintiff. *See, Jones v. Nissan No. Amer., Inc.,*

438 Fed.Appx. 388, 401 (6th Cir.2011) (employee was entitled to judgment as a matter of

law where, among other thing, the "record reflect[ed] a complete lack of evidence that

[the employer] took any steps to ascertain [the employee's] medical condition"); 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). This can certainly not be done without requesting so much as a doctor's note.

## C.    *Plaintiff Was Not Terminated*

Finally, to state a *prima facie* claim of discrimination under the ADA, or under the New York City Administrative Code, Plaintiff must show that he suffered an adverse employment decision. In this case, Plaintiff alleges in his Complaint that he was fired.

However, the testimony is clear that Plaintiff was never fired. Plaintiff was told that to return to work, he must first produce a doctor's clearance note – a note that Plaintiff himself stated he already had in his possession. *See*, Reilly at p. 48; Santaniello at p. 37; Lopez at p. 20-22. Plaintiff's own testimony makes it clear that he was never terminated – only that he was told to leave and to obtain medical clearance. He assumed that this meant that he was terminated, but he was never told that he was terminated.[3]

Plaintiff decided not to provide a doctor's note. That was his decision not to do so, and thereafter to not appear for work. The Co-op never terminated his employment and as a result, no adverse employment decision took place. Accordingly, as a matter of law, Plaintiff cannot maintain a claim of employment discrimination.

_____

[3] Plaintiff's testimony at his deposition was as follows:

> Q.    At any point did anyone associated with Midboro Management, Mr. Reilly of the co-op say, Mr. Lopez, you can no longer work here at any point?
>
> A.    No. Jennifer told me get your things and leave the premises you are not being paid to me I am terminated.

*See*, Exhibit "B" at p. 25, lines 9-15.

## POINT III

## PLAINTIFF'S FIRST, SECOND AND THIRD CAUSES OF ACTION, WHICH ALLEGE THAT THE CO-OP FAILED TO COMPENSATE HIM FOR OVERTIME, MUST BE DISMISSED AS AGAINST THE MOVING DEFENDANTS AS THEY WERE NOT PLAINTIFF'S EMPLOYER NOR WAS THERE ANY VIOLATION OF THE FAIR LABOR STANDARDS ACT OR THE NEW YORK LABOR LAW

Plaintiff brings three claims against the Moving Defendants, all of which are based upon the premise that he was not compensated for overtime, as required by the Fair Labor Standards Act and the New York Labor Law.

Initially, to be covered by either of these statutes, the Moving Defendants must first be deemed to be Plaintiff's employer.

A.    *The Moving Defendants Were Not Plaintiff's Employer*

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The cases interpreting this definition all focus on whether the person has "control" over the employee and the ability to hire and fire.  *See, Lopez v. Acme Am. Envtl. Co., Inc.,* 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) ("When it comes to 'employer' status under the FLSA, control is key.");  *see also Herman v. RSR Security Services, Ltd.,* 172 F.3d 132, 135 (2d Cir. 1998) ("[C]ontrol of employees is central to deciding whether appellant should be deemed an employer.").

In assessing economic reality, the Second Circuit has articulated two tests for determining whether an employment relationship existed for the purposes of the FLSA, one relating to formal control, the other to functional control.

The formal control test asks "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir. 1984).  As to the functional control test, the Second Circuit has identified a number of factors pertinent to determining whether a person or entity, even if lacking formal control, exercised "functional control" over an employee.  In *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 71–72 (2d Cir.2003), involving an employer and its subcontractors, the court identified the following as pertinent, although not exclusive, factors:

> (1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Id.; accord Barfield v. N.Y.C. Health & Hosp. Corp.,* 432 F.Supp.2d 390, 392–93 (S.D.N.Y.2006), *aff'd,* 537 F.3d 132 (2d Cir.2008).

Under either of these tests, the Moving Defendants were not Plaintiff's employers.  As previously set forth in this memorandum (*see, infra,* Point I), the Moving Defendants did not have the power to hire or fire, did not set compensation rates, did not control work schedules, did not own the premises or any equipment used and did not supervise the Plaintiff.  Under these circumstances, the Moving Defendants are not

Plaintiff's "employer", as that term is defined.  Accordingly, the first three causes of action must be dismissed.

B.      *Plaintiff Was Properly Compensated For His Time*

Even if the Moving Defendants are found to be his "employers" – which they are not – Plaintiff's first, second and third causes of action must be dismissed as Plaintiff was properly compensated.    Indeed, these causes of action are based upon Plaintiff's misunderstanding of what the Fair Labor Standards Act considers to be a work week.

In his deposition, Plaintiff explained that his claim for overtime pay is based upon his regular schedule, which provided that he work "Seven [days in a row] , off two, work three.  Off two, work seven, off three.  Like that." *See*, Exhibit "B" at p. 10, lines 4-6.

As set forth in the Santaniello Aff., Plaintiff confuses a calendar week with a "workweek" as that term is defined in the FLSA.

29 C.F.R. §778.105 provides that:

> An employee's workweek is a fixed and regularly recurring period of 168 hours–seven consecutive 24-hour periods.  It need not coincide with the calendar week but may begin on any day and at any hour of the day. . . . Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him.

As Ms. Santaniello points out in her affidavit, the "workweek" at the Co-op ran from Saturday to Friday.  Plaintiff's regular employment schedule required him to report to work on Saturday, Sunday, Wednesday, Thursday and Friday one week (with Monday and Tuesday being his two days off) ("Week One") and Monday, Tuesday, Wednesday, Thursday and Friday the next week (with Saturday and Sunday being his two days off) ("Week Two").  As a result, Plaintiff's yearly regular schedule consisted of 26 weeks

with him working on the days set forth in Week One, and 26 weeks with him working on the days set forth in Week Two. *See*, Santaniello Aff. at ¶¶5-6.

Given that Plaintiff's claim was that he would work Monday through Sunday on one week, and thus would require overtime pay for two of those days, it is clear that Plaintiff's claim lacks merit as he incorrectly follows the calendar week, as opposed to a "workweek", as that term is defined in the FLSA.

Plaintiff's Second Cause of Action alleges violation of New York's Labor Law. Specifically, Plaintiff alleges a violation of 12 NYCRR 142-2.2, which provides as follows:

> An employer shall pay an employee for overtime at a wage
> rate of one and one-half times the employee's regular rate
> in the manner and methods provided in and subject to the
> exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*,
> the Fair Labor Standards Act of 1938, as amended . . ..

As the statute itself refers to the Fair Labor Standards Act to determine when overtime pay must be tendered, the failure to state a claim under the Fair Labor Standards Act constitutes a failure to state a claim under New York's Labor Law.

Finally, Plaintiff's third cause of action, for violation of that portion of New York's Labor Law that deals with keeping employee-specific records. *See*, 12 NYCRR 142-2.6. However, this statute does not provide for damages to an employee but rather it permits an employee to offer testimony on an overtime claim where those records are unavailable. An employee bringing an action for unpaid overtime compensation continues to bear the burden of proving that he was not properly compensated for work performed. *See Anderson v. Mt Clemens Pottery Co.,* 328 U.S. 680, 687 (1946) . However, under the New York Labor Law, when an employer's records are inadequate, an employee may meet this burden by producing "sufficient evidence to show the amount

and extent of that work as a matter of just and reasonable inference." *Rivera v. Ndola Pharmacy Corp.,* 497 F.Supp.2d 381, 388 (E.D.N.Y.2007)  (quoting *Anderson*, 328 U.S. at 687).  In doing so, there must be "at least some credible evidence that plaintiff performed overtime work." *Daniels v. 1710 Realty LLC,* 497 Fed. App'x 137, 139 (2d Cir.2012) .  Once an employee satisfies his burden, the employer may rebut with "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson,* 328 U.S. at 687–88.

As the Plaintiff's entire premise on overtime is incorrect, the evidentiary standard set forth by 12 NYCRR 142-2.6 does not apply.  Accordingly, the third cause of action must be dismissed.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that, pursuant to FRCP 12(b) (6), the Court grant the instant motion to dismiss the Complaint in the entirety.


Dated:   New York, New York
         August 28, 2015

                                        BRAVERMAN GREENSPUN, P.C.


                          By:   _____
                                Andreas E. Theodosiou
                                *Attorneys for the Moving Defendants*
                                110 East 42nd Street, 17th Floor
                                New York, New York 10017
                                (212) 682-2900