UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
JOHN LOPEZ,                                        Case No.: 14 Civ. 3738 (JBW)

                              Plaintiff,

    -against-

HOLLISCO OWNERS' CORP., MIDBORO
MANAGEMENT, INC., and JENNIFER SANTANIELLO,
Individually,

                              Defendants.
_____X


## DEFENDANT HOLLISCO OWNERS' CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT


KAGAN LUBIC LEPPER
FINKELSTEIN & GOLD, LLP
*Attorneys for Plaintiff*
Emil A. Samman, Esq.
200 Madison Avenue, 24th Floor
New York, New York 10016
esamman@kll-law.com
(212) 252-0300

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………..…ii,iii

PRELIMINARY STATEMENT……………………….…………1

BACKGROUND…………………………………………………2

ARGUMENT……………………………………………………...2

      POINT I    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED IN ITS ENTIRETY………2

A.    Defendant Did Not Violate the FLSA or NYLL..…………3

B.    Plaintiff's Employment Was Not Terminated….…………4

C.    Defendant Did Not Violate New York Labor Law Regarding Employee Records………………………...8

CONCLUSION………………………………………………….…9

TABLE OF AUTHORITIES

*Cases*

Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)..................................................13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)...........................................2

Celotex Corp. v. Catrett,
477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)..........................................2

Jemine v. Dennis, III, 901 F.Supp 2d 365, 376, 97 (E.D.N.Y. September 28, 2012).................8

Martinez v. Hilton Hotels Corp.,
930 F.2d 508, 528 (S.D.N.Y. March 15, 2013.......................................................3

Ricci v. DeStefano,
557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009).................................3

Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Circuit. 1997)................................4

Williams v. Tri-State Biodiesel, LLC.,
2015 WL 305362 (S.D.N.Y January 23, 2015)........................................................4

Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).......................2

Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 78 (2d Circuit. 2003).............................4

*Other Authorities:*

Fed. R. Civ. P. 56(a)..............................................................................1

*29 U.S.C. §201*..................................................................................1

New York Labor Law, Articles 6 & 19...............................................................1

*42 U.S.C. §1201*.................................................................................1

New York City Administrative Code §8-107..........................................................1

*29 U.S.C. §207&255*..............................................................................1

*NYCRR 142-2.2*...................................................................................1

New York Labor Law §§ 2, 190, 651 & 170...........................................................1

*NYCRR 142-2.6*...................................................................................2

New York Labor Law §661..................................................................................2

*NYCRR 142-2.6*..............................................................................................2

*29 CFR §778.105*............................................................................................3

*29 U.S.C. §207*...............................................................................................4

## I.  PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Defendant Hollisco Owners' Corp.'s ("Hollisco" or "Defendant") in support of its cross-motion for summary judgment. For the reasons set forth herein and in the Declaration of Emil A. Samman ("Samman Declaration") and attachments thereto, it is respectfully submitted that this Court should grant summary judgment in favor of Defendant based upon the facts that Plaintiff's employment was not terminated by Defendants and Plaintiff was compensated for any overtime hours worked.

Summary judgment is only appropriate in those limited instances where there is no genuine issue of material fact. Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant in entitled to judgment as a matter of law." *Williams v. Tri-State Biodiesel, LLC*, 2015 WL 305362 (S.D.N.Y. January 23, 2015). To say that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law is an understatement.

Plaintiff John Lopez ("Plaintiff") filed this suit, complaining that Defendants failed to pay wages due and owed for hours worked in excess of forty (40) hours per workweek in violation of Fair Labor Standards Act (29 U.S.C. §201)("FLSA") and New York State Labor Law, Articles 6 & 19 ("NYLL") and that Defendants violated the Americans with Disabilities Act of 1990 (42 U.S.C. §1201) and the New York City Human Rights Law (New York City Administrative Code §8-107).

Plaintiff's first claim for relief alleges that the Defendants willfully employed Plaintiff for workweeks longer than forty (40) hours and failed to compensate Plaintiff for his employment in excess of forty (40) hours per week at a rate of at least one and one-half times the rate at which he was employed in violation of FLSA §§ 207 & 255.

The second claim for relief alleges a violation of NYLL §§ 2, 190, 651 & 170 and Title 12 NYCRR 142-2.2 for failure to pay overtime wages.

The third claim alleges Defendants failed to keep employee-specific records documenting actual hours worked in each week in violation of NYLL §661 and NYCRR 142-2.6. Plaintiff is not seeking damages relating to this claim.

Plaintiff's fourth, fifth, sixth and seventh claims allege discrimination in violation of the Americans with Disabilities Act and New York City Administrative Code by engaging in an unlawful discriminatory practice by discriminating against Plaintiff because of a perceived disability and by aiding, abetting, inciting compelling and coercing the above referenced alleged discriminatory and unlawful conduct.

Defendant will show that there are no genuine disputes as to any material fact as Plaintiff's employment was never terminated by the Defendants and Defendants did not fail to compensate Plaintiff for his employment in excess of forty (40) hours per week, therefore Defendant is entitled to judgment as a matter of law.

For the reasons set forth below, Defendant's cross-motion must be granted in its entirety.

## II. BACKGROUND

For the sake of brevity, the Court is respectfully referred to the Samman Declaration for a recitation of the material facts of this case.

## III. ARGUMENTS
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED IN ITS ENTIRETY

"Summary judgment is properly granted when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009).

As demonstrated, *supra*, Plaintiff does not possess any specific facts showing that there is a genuine issue for trial. Plaintiff relies solely on conclusory allegations or unsubstantiated speculation. In other words, Plaintiff lacks concrete evidence from which a judge or reasonable juror could return a verdict in his favor. In fact, Plaintiff's own sworn testimony supports Defendant's cross-motion for summary judgment. Therefore Defendant's cross-motion for summary judgment must be granted.

### A. Defendant Did Not Violate the FLSA or NYLL

The standard method of calculating overtime pay for salaried employees under the FLSA is to determine regular hourly rate of pay by dividing salary by number of hours which salary is intended to compensate; employee then receives one and one-half times that regular rate of pay for all hours worked in excess of forty hours per week. *Martinez v. Hilton Hotels Corp.*, 930 F.Supp. 2d 508, 528 (S.D.N.Y. March 15, 2013). An employee's workweek is a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For the purposes of computing pay due under the FLSA, a single workweek may be established for a plant or other establishments as a whole, or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by the employee. 29 CFR §778.105.

Plaintiff, as discussed above was employed as a porter whose job duties required him to work weekends at various times. His established workweek started on Sunday and was fixed. As per the FLSA, Saturday would then be the last day of his workweek (seven consecutive 24-hour periods). At no time during his employment as a porter for Defendant did Defendant fail to pay

Plaintiff overtime for hours worked in excess of forty during a workweek. Even if Plaintiff worked seven consecutive 24-hour periods, it would overlap two separate workweeks.

Plaintiff also seeks unpaid overtime compensation under 12 N.Y.C.R.R. § 142-2.2, which is analogous to an overtime compensation claim under 29 U.S.C. § 207. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 78 (2d Cir. 2003). Thus Defendant's overtime obligations under New York Law rise and fall depending on the applicability of FLSA. *Williams v. Tri-State Biodiesel, LLC*, 2015 WL 305362 (S.D.N.Y. January 23, 2015). Defendant refers the Court to Plaintiff's deposition testimony during which he testified to the following:

> Q. So you would work five days at a time and have two days off?
> A. No. I work seven days, off two, work three. Off two, work seven, off three. (*John Lopez Deposition, Page 9, Lines 10-13*)(See *Exhibit "C"* annexed to Samman Declaration)

Plaintiff fails to allege specific facts and submit any evidence establishing a violation of the FLSA regarding overtime and the NYLL regarding overtime. As stated above, Plaintiff's workweek as established by Defendants started on Sunday and concluded on Saturday. Therefore, summary judgment should be granted dismissing Plaintiff's federal and state overtime claims.[1]

**B.  Plaintiff's Employment Was Not Terminated**

To establish prima facie case of discriminatory discharge under the Americans with Disabilities Act, employee must show that: (1) employer is subject to ADA; (2) employee suffers from disability within the meaning of ADA; (3) employee could perform essential job functions of his/her job with or without reasonable accommodation; and (4) employee was fired because of his/her disability. *Ryan v. Grae & Rybicki, P.C.*, 135 F. 3d. 867, 870 (2d Circuit.1997). Plaintiff fails to establish a prima facie case of discriminatory discharge as Plaintiff was not fired by Defendants.

Additionally, the New York Administrative Code § 8-107(1) provides, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of

---

[1] It is important to note that Defendant did not set Plaintiff's work schedule nor was it responsible for payroll for any of Defendant's employees including Plaintiff, rather Defendant Midboro Management, Inc. acting as Defendant's managing agent was responsible for these duties.

the actual or perceived age, race, creed, color, national origin, gender disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

Plaintiff, Defendant Santaniello, and Defendant Hollisco employee Patrick Reilly all readily admit in their deposition testimony that Plaintiff was not fired but rather he chose not to return to work after management requested he provide a doctor's note clearing him physically to return to work[2].

### Plaintiff John Lopez Deposition Testimony:

Q. When did Miss Santaniello approach you?
A. A couple hours later.
Q. And what did she say to you or what did she ask you?
A. She told me to leave the premises.
Q. That is the first thing she told you?
A. Yeah.
Q. Did she say she wanted you to leave the premises?
A. Yes. She said something about Hepatitis B.
Q. B or C?
A. She said B.
Q. Did you have any further discussions with her?
A. No. We just talking about that and arguing about that and she just told me to leave and I am like why. She said she had concerns about workers and their families and this and that. So she told me to leave the premises without pay and get your stuff and go and that's what I did.
Q. She said leave the premises without pay?
A. That's right.
Q. Did you leave the premises?
A. Yes, I did.
Q. Did you have any further contact with Mrs. Santaniello afterwards?
A. Through a text.
Q. What did the text say?
A. She wanted me to get clearance for Hepatitis B or C.
Q. Were you told if you got clearance you could come back to the premises?
A. Not right then, no.
Q. Were you at some point told that?
A. She said she would discuss it with the board and see if I was capable of coming back.
Q. And at some point did you get clearance to come back?
A. I didn't get clearance for Hepatitis B or C.

---

[2] Plaintiff testified that he obtained a doctor's note but never returned to work nor provided the note to the managing agent but rather instead submitted the note to unemployment which determined that "Plaintiff was disqualified under Section 593.1 of the Unemployment Insurance Law because he quit his job without good cause". See *Exhibit "H"* annexed to Samman Declaration.

> Q. When you say you didn't get clearance, do you mean you never went to a doctor or Mrs. Santaniello never told you you are allowed to come back?
> A. No. If I didn't get clearance of Hepatitis B or C I wouldn't be allowed to come back.
> Q. So you never went to a doctor to get it checked?
> A. I did go to the doctor and I got a clearance to come back to work, physically fit to work.
> Q. Did you send that to Miss Santaniello?
> A. I think I sent it to unemployment.
> Q. But you never sent it to Miss Santaniello?
> A. Not that I recall.
> Q. So you never sent the clearance to Miss Santaniello?
> A. Not that I recall.
> Q. At any point in the future after that the immediate future, did you have any further communications with Miss Santaniello or PJ Reilly?
> A. No. I talked to PJ but not Jennifer, no.
> Q. Did you relay to PJ that you were not going to come back to work?
> A. I don't think so. I don't remember really.
> Q. And I know this might be repetitious a little bit but I want to ask it in a more clear manner. At any point were you told no matter what you were not allowed to come back to work?
> A. No. (*John Lopez Deposition Testimony, Pages 19-22*) (See *Exhibit "D"* annexed to Samman Declaration)

Additionally, on or about March 3, 2014, Defendant Santaniello sent Plaintiff a letter requesting that he provide a letter from his doctor (See *Exhibit "G"* annexed to Samman Declaration) advising that he was fit and able to return back to work full time. See Plaintiff's deposition testimony below regarding the letter:

> Q. At any point did you receive a correspondence from her?
> A. Yeah. I did receive a letter.
> Q. What did the letter state?
> A. Trying to get clearance from Hepatitis B or C.
> Q. In that letter did she say even if you got the letter you will never be permitted to work here again?
> A. No.
> Q. At no point were you actually terminated, they just wanted you to get clearance?
> A. When someone tells you to get your things and you get no pay, that to me is you are terminated.
> Q. At any point did anybody associated with Midboro Management, Mr. Reilly or the co-op say Mr. Lopez, you can no longer work here at any point?
> A. No. Jennifer told me get your things and leave the premises you are not being paid to me I am terminated.
> Q. But she also said until you get clearance for Hepatitis B or C; right?
> A. B or C, yes
> Q. Did your doctor give you a note saying that you were fit to go to work?
> A. Yes.

Q. Did you provide that note to Hollisco?
A. No.
Q. Did you provide that note Jennifer?
A. No.
Q. Did you provide that note to Midboro?
A. No.
Q. Did you ever obtain a letter from your doctor stating that you are fit and able to return back to work full time?
A. Yes.
Q. When did you obtain the letter?
A. The one I gave to the unemployment?
Q. Was that the one that you obtained within a week of February 28th?
A. I think so.
Q. Why didn't you give that letter in response to this letter?
A. Because it was already too late. The damage was done. The embarrassment and everything that I had I couldn't go back to that place. The gossip and everything that runs around in that place is, forget it. I will not return. Even if I got the letter I knew I was not going back. (*John Lopez Deposition Testimony, Page 24, Lines 1-25; Page 25, Lines 1-18; Page 79, Lines 3-11; Page 81, Lines 8-24*)(See *Exhibit "D"* annexed to Samman Declaration)

**Defendant Jennifer Santaniello Deposition Testimony:**

Q. Do you know if he ever gave any sort of letter to this effect?
A. We never received one.
Q. Do you know what happened to John's employment as a result?
A. John never showed up back to work. He never gave the letter, so he never returned to work.
Q. Was he fired for not bringing the letter?
A. I don't know how to characterize what happened to John. No one specifically fired John.
Q. When you asked John to leave the premises on February 28th, was he terminated at that point?
A. No.
Q. Did he have the option to return to work?
A. Yes.
Q. What did he have to do to return to work?
A. Just get a doctor's note.
Q. Did he ever do that?
A. No.
Q. Did he ever contact you guys?
A. No to my knowledge. (*Jennifer Santianello Deposition Testimony, Page 59, Lines 17-25; Page 60, Lines 1-5; Page 64, Line 25; Page 65, Lines 1-14*)(See *Exhibit "E"* annexed to Samman Declaration)

**Patrick Reilly Deposition Testimony:**

A. He said, I have the note at home and I will go to the Bronx and I will pick it up and come back. She said, no problem. Come back, get me the note, and you are good to go. He left that day, went to the Bronx, never came back. He never came back to work. That was the last thing. He was never fired, he just left.

A. She didn't say you are fired. I never said I was firing him, he was not fired. He left to go get the information at his house and he never came back.
(*Patrick Reilly Deposition Testimony, Page 36, Lines 17-25; Page 44, Lines 5-8*)(See *Exhibit "F"* annexed to Samman Declaration)

Defendant Hollisco Owners' Corp. asserts that the fact that Plaintiff's employment was not terminated by the Defendants but rather he chose not to return to work cannot be genuinely disputed and is strongly supported by the deposition transcripts of Plaintiff, Defendant Santaniello and Defendant Hollisco employee Patrick Reilly. The deposition testimony cited does not establish the presence of a genuine dispute and reiterates that Plaintiff cannot produce admissible evidence to support his baseless allegations. Accordingly, Defendant's cross-motion for summary judgment must be granted.

## C. Defendants Did Not Violate New York Labor Law Regarding Employee Records

Plaintiff's Third Cause of Action alleges Defendants violated NYLL § 661 and NYCRR 142-2.6 by failing to keep employee-specific records documenting actual hours worked in each week. Plaintiff is not seeking damages relating to this cause of action.

Additionally, as argued above, the NYLL mirrors the FLSA, including its wage and overtime compensation provisions, which covers employee records. Accordingly, Plaintiff needs to submit sufficient evidence from which violations of the FLSA and the amount of an award of damages may be reasonably inferred. *Jemine v. Dennis, III*, 901 F.Supp 2d 365, 376 (E.D.N.Y. September 28, 2012. Therefore, this cause of action must be dismissed as Plaintiff has failed to submit any evidence for which a violation of the FLSA can be derived.

## IV. CONCLUSION

For the reasons discussed herein and in the Samman Declaration it is respectfully requested that an Order should be issued (i) granting Defendant's cross-motion for summary judgment dismissing Plaintiff's complaint in its entirety and (ii) granting such other and further relief as is deemed just and proper.

KAGAN LUBIC LEPPER
FINKELSTEIN & GOLD, LLP
*Attorneys for Defendant*
*Hollisco Owners' Corp.*

Emil A. Samman, Esq. (ES-8784)
200 Madison Avenue, 24th Floor
New York, New York 10016
esamman@kll-law.com
(212) 252-0300